**STATE ex WHITE v ZUPNIK et**

Ohio Appeals, 8th Dist, Cuyahoga Co

No 16457. Decided Feb 28, 1938

J. H. Murray, Cleveland, A. F. Gallagher, Cleveland, for relator.

H. S. Brainard, Cleveland, C. W. White, Cleveland, for respondents.

## OPINION

By TERRELL, J.

This is an original action in this court in mandamus, wherein Relator seeks a writ of mandamus to compel Respondants who are the trustees of the Police Pension Fund of the City of Cleveland, to make payments of pension for her ward.

Demurrer was filed on behalf of the Respondants and was overruled. Whereupon they filed an answer. The issues were submitted to the court upon an agreed statement of facts, substantially as follows:

Relator is the Guardian of Clayton E. White, incompetent. Respondents are the trustees of the Police Relief Fund of the City of Cleveland. As such they are charged with the statutory duty of making "all rules and regulations for the distribution of the fund, including all qualifications of those to whom any portion of the fund shall be paid, and the amount thereof."

On April 30, 1936, the trustees adopted Rule 22, as follows:

"Sec 22:—Any member of the Division of Police who becomes wholly incapacitated for duty by reason of disease or injury,

which in the opinion of the Board of Trustees entitles him or her to compensation, shall, after proper certification of such disability by the Police Surgeon, be placed upon the police relief roll at a rate of fifty (50) percent of his or her salary; provided, however, that such amount of pension shall not be less than Twelve Hundred Dollars ($1200.00) per year * * *."

Clayton E. White was appointed a member of the Cleveland Police Force in 1923, and engaged in the performance of his duties until December 31, 1931, when he became ill and collapsed while directing traffic. He was then taken to City Hospital where he was confined until December 2, 1932, and then transferred to Veteran's Hospital at Chillicothe, Ohio, where he has ever since been confined under total disability, mental and physical, which has been diasgnosed as paresis induced by syphillis.

In May, 1932, the police surgeon advised that Relator's ward was suffering from paresis which would continue to incapacitate him and eventually result in brain deterioration.

On December 12, 1932, the Director of Public Safety wrote him that on and after January 16, 1933, he would no longer be carried on the payroll.

. On December 29, 1932, the police surgeon advised that he was totally, physically and mentally incapacitated and unfitted for service then or in the future, and should be placed on pension.

On January 16, 1933, the police surgeon advised that his condition was of syphilitic origin which may or may not have had its inception prior to his joining the department.

On January 16, 1933, his name was removed from the payroll.

On July 29, 1933, he was adjudged insane. Relator made application for letters of Guardianship and qualified as his Guardian on January 29, 1936.

On March 25 1937, Relator filed an application for pension with the pension board.

On May 12, 1937, his office was declared vacant by the Director of Public Safety as of January 16, 1933, notice of which was given to Relator, and the Civil Service Commission. This action of the Director was concurred in by the Civil Service Commission.

On July 26, 1937, the Board of Trustees having theretofore considered said application from time to time, granted same effective May 13, 1937.

On September 8, 1937, relator filed this action wherein she prays that a writ of mandamus issue to respondants to compel them to pay pension for her ward from January 16, 1933 to May 13, 1937, at $100.00 per month.

In the answer of the Pension Board they set up that the disability of Relator's ward was occasioned by paresis induced by sphiIlis, which was not incurred in the course of performance of duty.

Respondents say they considered the application of March 25, 1937, and ultimately granted the same as of the earliest date it lawfully could be done, namely, the date on which Relator's ward ceased to be a member of the Police Force.

The question before us then to determine is whether or not Relator's ward is entitled to pension from January 16, 1933, to May 13, 1937.

The right of Relator's ward to pension is admittedly based upon Rule 22 of the Pension Board. This rule provides that a member of the department is entitled to a pension under the circumstances therein set forth.

We will now consider Rule 22, phrase after phrase in the following numbered paragraphs:

(1) Any member of the Division of Police is entitled to a pension if he "becomes wholly incapacitated for duty by reason of disease * * *."

It is admitted by respondants that Relator's ward became wholly incapacitated for duty by reason of disease, which disease and incapacity evidenced itself eight years after he joined the police department.

(2). "Which (incapacity) in the opinion of the Board of Trustees entitles him to compensation * * *."

Evidently in the opinion of the Board, his incapacity did entitle him to compensation, which they granted him from May 13, 1937. They claim in their answer that this was the earliest date allowed by law from which they could start the pension. He was under the same incapacity from January 16, 1933, because it is clearly shown that in December, 1932, the police surgeon advised that he was totally, physically and mentally incapacitated for duty.

At this point, the writer expresses some wonder why Respondants in their answer asserted that the disability was occasioned

by paresis induced by syphillis not incurred ir the course of his employment. Nothing in Rule 22 requires the disability to have been incurred in the course of employment. All that is required as to the origin of the disability is that it be from disease or injury, howsoever incurred. If the pension board desired to make such a rule as above intimated, they failed to so express it in Rule 22. In attempting to interpret Rule 22, as written, we should give to it an interpretation in the light of reason and the purposes for which it was enacted. The board itself by granting some pension under the disability herein shown, either recognized that Relator's ward was entitled to pension for the disability, whether or not its origin arose out of his employment, or, they decided that its origin arose out of the employment. In either event, they came to the opinion that under the circumstances in this case the ward was entitled to pension.

The phrase above set forth under item two certainly was not intended to allow the Board to exercise an arbitrary opinion. The ultimate opinion of the Board should be based on facts which applied alike to all members of the police department.

The Board could not arbitrarily deny to one a pension because his disability originated from syphillis and grant a pension to one whose disability originated from smallpox contracted by infection received while off duty The law and spirit of Rule 22 does not permit of such an unreasonable distinction. It would seem in this case that the Board of Trustees, by their very action in allowing pension in this case, do not contend that they have the right to exercise such an arbitrary opinion.

It appears to us that when the Board concluded that the applicant for pension is wholly incapacitated by reason of disease that thereby they have finally come to the conclusion that the applicant is entitled to compensation.

(3) "Shall, after proper certification of such disability by the police surgeon, be placed on the police relief roll."

In this case it is clear that the police surgeon properly certified to his superior in the department, the Director of Public Safety, as early as May, 1932, that the ward was incapacitated by paresis and on December 29, 1932, the police surgeon properly certified that said ward was totally, physically and mentally incapacitated and unfitted for his work permanently.

The phrase "proper certification" evidently refers to a certification by the police surgeon to his superior officer, the Director of Public Safety, of the disability of the applicant for pension. It is not contended in this case, but it might be argued that the proper certification herein mentioned refers to a certification by the police surgeon of the disability of the applicant to the Board of Trustees.

Rule 22 is silent as to who should receive the certification from the police surgeon. The whole subject of Rule 22 relates to the status of the employment of the applicant for pension, the relation of employer and employee and the disability of the employee to do service in his said employment. It is our interpretation of this phrase in Rule 22 that the certification therein mentioned refers to the certification by the police surgeon to the Director of Public Safety.

We conclude that the proper certification of the disability was made in this case.

(4) Said incapacitated member of the police department "shall be placed on the police relief roll at the rate of fifty (50) percent of his salary; provided, however, that such amount of pension shall not be less than $1200.00 per year."

The evidence does not show the exact amount of salary drawn by Relator's ward, while on the police force, but since the minimum provided as pension is $1200.00 per year, he would at least be entitled to said minimum, if any. This amount is definite.

Great stress is laid on the contention that Relator's ward continued to be a member of the police force until May 12, 1937, when the Director of Public Safety declared his office vacant. We do not comprehend the force or effect sought to be given to such contention by Respondants. The facts show that on May 12, 1937, the office was formally declared vacant by the Director of Public Safety, but at the same time the Director, fully cognizant of the real facts that had theretofore transpired, declared the vacancy to exist as of January 16, 1933. Now the record shows that on January 16, 1933, the ward's name was stricken from the payroll and thereafter he received neither salary nor pension although he was wholly incapacitated. His right to a pension accrued when he became wholly incapacitated. Relator is claiming that right as of January 16, 1933. Whether or not his office was technically

declared vacant at that time has no bearing on his right to a pension; that is not one of the conditions precedent set forth in Rule 22.

It appears to the writer, however, that he was effectually discharged from the force when he was taken off the payroll. It would be an empty honor to serve without the emoluments of the office.

Respondants contend that they awarded pension to begin at the earliest time allowed by law, to-wit, May 13, 1937. In considering this contention we find there is no definite time set forth in Rule 22 in which the application for pension should be filed. The rule does provide a right to a pension for one who has been wholly incapacitated. The exercise of this right depends upon him or someone in his behalf. No time limitation is placed on the exercise of this right. A reasonable interpretation of this rule would lead to the conclusion that when the right to pension accrues it continues to exist until it is exercised and the amount of pension stipulated continues to accrue until called for. Any other conclusion, it seems, would do violence to the letter and spirit of the rule adopted.

From the foregoing considerations we have come to the conclusion that under the circumstances in this case there is a clear duty under Rule 22 enjoined upon the Respondants to award pension to Relator's ward from January 16, 1933 to May 13, 1937, at the rate of One Hundred Dollars ($100.00) per month—Twelve Hundred Dollars per year—and that the Relator has shown a clear right thereto.

We have also concluded that Relator's claim does not bear interest prior to the date of the application for said pension.

A writ of mandamus may issue accordingly.

LEVINE, PJ, concurs in judgment.
LIEGHLEY, J, not participating.